

1  Daniel Desmond
2  226 North Hobson St., Apt. A-7
   Mesa, Arizona 85203
3      *Pro per*

4

5            **IN THE UNITED STATES DISTRICT COURT**

6              **FOR THE DISTRICT OF ARIZONA**

7

8  DANIEL DESMOND,
9
                                    CV-16-04510-PHX-JZB
10                  Plaintiff,      CV-15-02166-PHX-JAT

11  vs.                            **FIRST AMENDED COMPLAINT**
12                                      **JURY DEMAND**
   GoDaddy LLC,
13
14                  Defendant.
15  _____

16              **NATURE OF THE ACTION**
17
18        This is an action under the Americans with Disabilities Act (hereinafter referred to

19  as ADA), 42 U.S.C. §12101 et seq., to correct unlawful disability based discrimination and

20  retaliatory employment practices, and to provide appropriate relief to Daniel Desmond

21  (hereinafter referred to as Plaintiff), who was adversely affected by such practices. At all
22
23  times relevant to the complaint, Plaintiff was a telephone customer service operator who

24  requested a reasonable accommodation following the appropriate procedures, as laid out

25  by his employer, GoDaddy, LLC (hereinafter Defendant).  Defendant failed to engage in
26
    the interactive process thereby denying Plaintiff a reasonable accommodation.
27
28  Subsequently, in retaliation for requesting an accommodation and with discriminatory

1   animus toward Plaintiff's disability, Plaintiff was terminated on June 20, 2017.

## JURISDICTION AND VENUE

2

3   1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331,

4

5   1337, 1343.

6   2.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) and

7   (c) because Defendant's registered agent is located within Maricopa County, Arizona the

8

9   events forming the basis of this lawsuit took place within this judicial district.

10   3.       This Court is empowered to grant declaratory relief pursuant to 28 U.S.C.

11   §§ 2201 and 2202.

12

## PARTIES

13

14   4.      At all relevant times, Defendant is, and has been, a Delaware limited liability

15   company, registered to do business in the State of Arizona, which operates call centers

16   throughout Arizona. Defendant employed Plaintiff at its location in Scottsdale, Arizona

17

18   and has continuously employed at least 15 workers.

19   5.      Defendant has continuously been an employer as that term is defined by 42

20   U.S.C. § 12111(5)(A). Defendant was the employer of and had supervisory control of all

21

22   individuals employed at its facility in Scottsdale, Arizona.

23   6. Defendant is, and has been at all times material to this First Amended Complaint,

24   a "covered" entity" as that term is defined in 42 U.S.C. § 1211(2).

25

26   7.      Plaintiff is, and has been at all times material to this First Amended

27   Complaint, an adult resident of Maricopa County, Arizona and a "complaining party" as

28   the term is defined in 42 U.S.C. § 1981a(d)1.

2

8.    At all times material to this First Amended Complaint, Plaintiff was an "employee" of Defendant as that term is defined in 42 U.S.C. §12111(4).

9. Plaintiff is, and has been at all times material to this First Amended Complaint, a "qualified individual with a disability" as used in 42 U.S.C. § 12111 (8) and 42 U.S.C. § 12102, specifically, Plaintiff suffers from bipolar II and generalized anxiety disorder.

10.    Plaintiff is a person with a "disability" as defined by 42 U.S.C. § 12102, specifically, bipolar II and generalized anxiety disorder, which disabilities were known to his employer, Defendant, because they had been disclosed when he had sought reasonable workplace accommodations for his disability and Family Medical Leave Act (FMLA) leave.

## CONDITION PRECEDENT

11.    Prior to the initiation of this lawsuit, Plaintiff filed charges with the Equal Employment Opportunity Commission (Commission) alleging violations of the ADA by GoDaddy, (Charge # 540-2016-03039). On September 23, 2016, the Commission issued Plaintiff its "Notice of Right to Sue" on his charge of discrimination, *supra*. The Complaint was filed within ninety days of Plaintiff's receipt of the Commission's Notice of Right to Sue.

12.    All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF THE FACTS

13.    Plaintiff is an individual with a qualifying mental health disability. He receives treatment for bi-polar disorder (also known as "bi-polar depression") and anxiety since 2007.

14.     Plaintiff was employed by Defendant from March 13, 2013 until June 20, 2016, when Defendant terminated his employment.

15.     Defendant's operates a domain registration business throughout the United States.  In Arizona, Defendant operates three offices to market their products including but not limited to their domain registration business.

16.     Defendant's offices are organized into various departments and/or teams, each dedicated to addressing Defendant's various customer service and business needs.

17.     Defendant's Inbound Sales and Service Department (hereafter Inbound) is primarily responsible for providing technical support to existing customers.  Whereas, Defendant's Customer Development Team (hereafter CDT) is primarily responsible for outbound calls to existing customers to market and sell new products.  Defendant also maintains a Professional Web Design Department (hereafter PWD) dedicated to development and design of webpages.

18.     Plaintiff began his employment with Defendant as an employee in Inbound. He remained in this position only three months until June 6, 2013 at which point he was transferred to PWD where he worked for over two years designing webpages for Defendant.

19.     In 2014, while working in the PWD department, Plaintiff and his wife divorced and he received 50% parenting time of their three children.

20.     Because Plaintiff wanted to be closer to home for his children, he requested assistance from his PWD supervisor, Brandon Hickock (hereafter Hickock), in facilitating a transfer to his old position in Inbound. This transfer would allow him to move to an office

that was closer to his home.

21.     Hickock told Plaintiff that an outbound sales position in CDT, would provide Plaintiff with the potential to earn more income.

22.     Hickock, assisted Plaintiff by contacting Human Resources and arranging for an immediate interview for this position. As a result, Plaintiff was hired into CDT, and transferred in March 22, 2015.

23.     Soon after Plaintiff transferred to CDT, Plaintiff began to realize that performing outbound sales calls exacerbated his issues with anxiety and depression. This created a feedback loop whereby; the duties of his job negatively affected his mental health, and his mental health negatively affected his job performance.

24.     Plaintiff wanted to continue his employment with Defendant and sought to perform his job to the best of his abilities. Plaintiff told his CDT supervisor, Matthew Johnson (hereafter Johnson) that he was suffering from generalized anxiety disorder, depression, and bi-polar II disorder, and that those conditions were adversely affecting his job performance. On or about May or June, 2015, Plaintiff requested that he be transferred back to a position in Inbound

25.     Plaintiff reasonably expected that his request for accommodation would be honored by Defendant.

26.     Johnson ignored Plaintiff's request to transfer positions. Johnson otherwise offered no support or coaching to Plaintiff regarding his struggles with mental illness. Plaintiff was advised, in essence, to "hang in there."

27.     Plaintiff continued to struggle with anxiety and depression while working in

CDT. His anxiety continued to negatively impact his work performance, and his depression deepened.

28.     After disclosing his struggles with mental illness to Johnson the CDT supervisor, Plaintiff initiated monthly meetings with Johnson to discuss his disability and its negative impact on his work performance.

29.     At no time during these monthly meetings was Plaintiff warned, counseled, reprimanded, or disciplined regarding his work performance.

30.     Johnson stated that he understood the effects of Plaintiff's condition, and was willing to monitor and work closely with Plaintiff in light of his condition, but that he could not assist in providing Plaintiff with the reasonable accommodation he requested. Johnson did not propose any alternative accommodations.

31.     Throughout his tenure in CDT Plaintiff regularly made requests to Johnson for a transfer.  Plaintiff's insistence on a transfer continued unabated, even when he was denied.

32.     In April 2016, Plaintiff applied for, and received, intermittent leave under the Family and Medical Leave Act (FMLA) so that he could take time away from work to treat his condition. Plaintiff filed paperwork with Defendant's Human Resources department and Johnson.

33.     Plaintiff's request for FMLA leave was made in accordance with Defendant's policies and procedures.

34.     After filing the FMLA paperwork, Plaintiff again requested a transfer of job because of the deleterious effects his current position was having on his health and job

performance.

35.     Plaintiff's request was again denied.

36.     By chance, Plaintiff was soon after contacted by his previous supervisor in PWD.  Plaintiff's former supervisor Hickock told Plaintiff that he was now managing a new inbound sales team, and arranged an interview with Plaintiff so that he can join this new team.

37.     After the job interview, Defendant extended a job offer to Plaintiff for the inbound sales position, and he accepted. The expected start date at the new inbound sales position was June 20, 2016. This meant that Plaintiff need only continue working in Outbound for about another month.

38.     Plaintiff continued to struggle while working in CDT, but persevered in anticipation of his new position.

39.     On June 8, 2016, Plaintiff was unexpectedly summoned to a meeting with two managers of CDT, Joy Rodgers and Julie DeCiccio. Johnson was not present at this meeting.

40.     At the meeting, the CDT managers played back audio recordings of two outbound sales calls in which Plaintiff performed poorly.

41.     Neither Johnson nor the CDT managers had never previously counseled or disciplined Plaintiff in regards to these sales calls.

42.     Plaintiff attempted to explain the underlying reasons for his performance on these phone calls to the CDT managers. Both CDT managers denied knowing about Plaintiff's medical condition, or about Plaintiff's repeated requests for accommodation.

43. The Outbound managers told Plaintiff that he was being put on administrative leave, and that Human Resources would be in touch with him.

44. Plaintiff asked the CDT outbound managers about the status of his new position, and was told indirectly that his employment in that position was unlikely to occur. He was then asked to leave the building.

45. On June 16, 2016, Plaintiff spoke to a human resources representative, who told him that the company was consulting their legal department, and would be in touch with him soon.

46. On June 20, 2016, the date he was scheduled to begin his new position, Plaintiff was terminated by Defendant.

47. Plaintiff's requests for accommodation were consistently made according to Defendant's written policy, and simple: he requested that he be transferred to a position that did not require him to make outbound sales calls.

48. Without the requested accommodation, Plaintiff's depression and anxiety gradually worsened. His job performance similarly suffered.

49. Despite the ill effects on his health, Plaintiff continued working in the CDT sales position to the best of his ability.

## COUNT ONE – DISABILITY DISCRIMINATION UNDER COUNT 1 OF THE ADA

50. The above allegations in paragraphs 1-48 are re-alleged and adopted by reference 1-47.

51. Plaintiff is an individual with a disability as defined under the ADA.

8

52.   Defendant is a qualifying employer under the ADA

53.   Plaintiff asserts that his disability, or what Defendant regarded as a disability, was a motivating factor and consideration in Defendant's decision to discharge him and failure to re-hire him.

54.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered past and future lost wages, and past and future compensatory damages (including, but not limited to, humiliation, inconvenience, suffering, embarrassment, loss of enjoyment of life, emotional pain, mental anguish, and emotional distress).

55.   Defendant acted with malice or reckless indifference to the rights of Plaintiff, and Plaintiff seeks punitive damages for this outrageous conduct.

## COUNT TWO – FAILURE TO ACCOMMODATE UNDER THE ADA

56.   The above allegations in paragraphs 1-55 are re-alleged and adopted by reference.

57.   Plaintiff is an individual with a disability as defined by the ADA.

58.   Defendant has 15 or more employees.  Therefore, Defendant is a qualifying employer under the ADA.

59.   Plaintiff suffers from a disability.  Nonetheless, he can perform the essential functions of his position with a reasonable workplace accommodation.

60.   Plaintiff requested accommodations for his disability to Defendant and his accommodation was open and apparent to Defendant. Nonetheless, Defendant intentionally refused or failed to: (1) engage interactively with Plaintiff regarding his accommodation; and (2) accommodate Plaintiff's mental handicap or serious medical

condition that was not unreasonable or an undue hardship.

61.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered past and future lost wages, and past and future compensatory damages (including, but not limited to, humiliation, inconvenience, suffering, and embarrassment, loss of enjoyment of life, emotional pain, mental anguish, and emotional distress.)

62.    Defendant acted with malice or reckless indifference to the rights of Plaintiff, and Plaintiff seeks punitive damages for this outrageous conduct.

## **PRAYER FOR RELIEF COUNTS I THROUGH II**

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court cite the Defendant to answer and appear, and upon final trial enter a judgment upon his favor and award the following:

63.    Back pay and benefits;

64.    Front pay and benefits;

65.    Compensatory damages, as provided for by 42 U.S.C. §1981 a(b);

66.    Injunctive relief, as provided for by 42 U.S.C. § 12117 (a)(2) and 42 U.S.C. § 2000e-5(g)1;

67.    Plaintiff expert fees, as provided by 42 U.S.C. § 2000 e-5(k) and 42 U.S.C. § 1988(c);

68.    His reasonable attorney's fees incurred, pursuant to 42 U.S.C. § 12205, 42 U.S.C. §2000e-5(k), 42 U.S.C. §1988(b), FRCP Rule 54(d)2;

69.    Prejudgment and post-judgement interest accrediting at the maximum rate allowed by law;

70.     Such other and future relief as the court deems necessary, proper, and equitable, general or specific, to which Plaintiff may show himself to be justly entitled.

**RESPECTFULLY SUBMITTED** this 20 day of March, 2017.


_____
Daniel Desmond, Plaintiff
*Pro per*

11

Exhibit 1

Daniel R Desmond
266 N Hobson Street
Mesa, AZ 85203
602-570-5883

___✓ FILED ___ LODGED
___ RECEIVED ___ COPY

DEC 2 2 2016

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel R Desmond,<br><br>                              Plaintiff,<br><br>v.<br><br>GoDaddy,<br><br>                              Defendant. | CASE NUMBER:<br><br>     CV-16-04510-PHX-JZB<br><br><br>**COMPLAINT** |

### Jurisdiction

1.      The Court has jurisdiction over this action under 28 U.S.C. § 1331. This employment discrimination lawsuit is based on:

American with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, et. seq., for employment discrimination on the basis of disability.

2.      The plaintiff is a resident of Mesa, Maricopa County, Arizona and a citizen of the United States. The defendant, GoDaddy, is a resident of Scottsdale, AZ and a citizen of the United States. The cause of action arose in the Phoenix division.

## Employment Discrimination Complaint

3. ------- The conduct complained of in this lawsuit involved the following: -------

Termination of my employment.  Failure to accommodate my disability.  Retaliation.

4. ------- The conduct(s) above is referred to in the charge of discrimination.  I believe I was discriminated against because of my:  Disability. ------

5. ------- The reason(s) above is referred to in the charge of discrimination.  The discriminatory conduct occurred at: 2299 W Obispo Ave., Gilbert, AZ 85233 from June 2015 to June 2016.

6. ------- Mr. Desmond was terminated from GoDaddy in June 2015 for violations of the company's Customer Care Standards Policy.

7. ------- Mr. Desmond claims these violations were not intentional but rather a result of his struggles with mental illness;  Biolar Disorder II (Biolar Depression) and Anxiety.

8.      Mr. Desmond is under the treatment of a psychiatrist and was approved by GoDaddy HR for intermittent absences to treat his condition under the Family Medical Leave Act (FMLA).

9.      Mr. Desmond's repeatedly asked his SUPERVISOR for help with an accommodation to transfer to an open position better suited to his condition, but was continually denied.

10.     GoDaddy was aware of Mr. Desmond's disability and did not engage in the interactive process or try to accommodate him, and instead terminated him.

### Demand

11.     Due to these violations and the extreme adverse affects GoDaddy's treatment of Mr. Desmond has had on his finances and health, Mr. Desmond requests the following relief:

1) $2000.00 -- Back pay for 2 weeks unpaid administrative leave prior to termination

2) $150,000.00 -- Front pay for 2 years salary

3) $10,000.00 -- 401k retirement account

4) $5,000.00 -- GoDaddy stock

5) $1,000.00 --Attorney fee

6) $32,000.00 Emotional damages

TOTAL MONETARY COMPENSATION: $200,000.00

12.     The Plaintiff wants a trial by jury.

## Administrative Procedures

~~**13.**~~ ~~I have filed a charge of discrimination against the defendant(s) with the Equal Employment~~

~~Opportunity Commission or other federal agency on 09/12/16.~~

~~**14.** I have received a Notice of Right to Sue Letter.~~

| | |
|---|---|
| ~~Dated: 12/21/2016~~ | *[signature]* <br><br> Signature of Pro Se Plaintiff <br><br> Daniel R Desmond <br> 266 N Hobson Street <br> Mesa, AZ 85203 <br> 602-570-5883 |