C. Christine Burns #017108
David T. Barton #016848
Alison Pulaski Carter #025699
**BURNSBARTON LLP**
45 West Jefferson, 11th Floor
Phoenix, AZ 85003
Phone: (602) 753-4500
christine@burnsbarton.com
david@burnsbarton.com
alison@burnsbarton.com
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DANIEL DESMOND,<br><br>Plaintiff,<br><br>vs.<br><br>GODADDY.COM, L.L.C., a foreign limited liability company,<br><br>Defendant. | NO. CV-16-4510-PHX-DLR<br><br>**JOINT CASE MANAGEMENT REPORT**<br><br><u>Rule 16 Case Management Conference:</u><br><br>August 1, 2017 |

Plaintiff Daniel Desmond ("Desmond" or "Plaintiff") and counsel for Defendant GoDaddy.com, LLC ("GoDaddy") hereby confirm that they have met and conferred and submit this Joint Case Management Report ("Joint Report") pursuant to Fed.R.Civ.P. 26(f) and this Court's Order Setting Rule 16 Case Management Conference [Doc. 16].

**1.    The parties who attended the Rule 26(f) meeting and assisted in developing the Case Management Report.**

Plaintiff Daniel Desmond attended the meeting, together with two lawyers from Community Legal Services: Amanda Caldwell and Justin Hernandez, who are assisting Mr. Desmond but are not entering an appearance in the case. A summer law clerk from Community Legal Services also attended the Rule 26(f) meeting with Mr. Desmond.

Go Daddy was represented by its in-house counsel, Beth Tippett, and counsel of record, Christine Burns.

**2.    A list of the parties in the case, including any parent corporations or entities (for recusal purposes).**

<u>Plaintiff:</u>  The plaintiff in this case is Daniel Desmond, an individual.

<u>Defendant:</u>  The Defendant in this matter is GoDaddy.com, L.L.C.

**3.    A short statement of the nature of the case.**

<u>Plaintiff's Position</u>

**1)    I have a qualifying condition per ADA, and GoDaddy was aware of it.**

- Supported by medical records and testimony from Psychiatrist

- FMLA paperwork was filed with GoDaddy HR.

- This was admitted in GoDaddy's response.

**2)    My condition affected my performance at work.**

- Supported by review of metrics compared to Psychiatrist session notes.

- Changes in work performance will correspond to the severity of my condition as documented in Psychiatrist notes.

- Psychiatrist will testify to the validity of the affects of my condition on my work, and will verify that I regularly discussed with him my desire to change positions, and my frustration with not being able to transfer despite repeated requests.

**3)    I requested a reasonable accommodation to transfer departments due to my illness.**

- My requests were made verbally to my direct supervisor Matt Johnson on a regular basis during our monthly 1-on-1 sessions, as well as several impromptu meetings with Johnson that I requested to discuss my condition.  Johnson's response was always "no".

- At the time, I was not thinking of this in a legal sense, so I did not go to HR for the accommodation because I did not want to go over my supervisor's head. I felt it was my supervisor's responsibility to help me find success with the company. I based this on a previous experience with my former supervisor Brandon Hickok, who had been more than willing to help me transfer before. I had no reason the think Johnson would act differently.

- Another co-worker who sat next to me can testify that I told him about my struggles with

my condition, and my frustration with Johnson not helping me transfer. He can also testify that I was constantly checking the job board looking for other opportunities since Johnson wouldn't help.

**4)  ADA requires employers to enter into the interactive process with an employee with a qualifying condition who requests a reasonable accommodation**.

- The request <u>can be made verbally</u> or in writing.

- If the employer feels the specific accommodation would cause undue hardship to the business, they do not have to grant that request, but they are required to discuss other options with the employee - this did not happen.

**5)  GoDaddy's ADA policy clearly states that "a supervisor who becomes aware of an employee's need for an accommodation must notify HR immediately."**

- Matt Johnson did not notify HR about any of my repeated requests to transfer, and therefore violated GoDaddy's policy, as well as the law.

**6)  I found another position with the company that would have less effect on my condition, and would satisfy my request for a reasonable accommodation.**

- I was offered a position to work with my former supervisor, Brandon Hickok, and was scheduled to start on June 20.

**7)  I had a meeting with CDT Managers Joy Rodgers and Julie DiCiccio where they reviewed 2 calls where my condition was adversely affecting my performance.**

- I had never been reprimanded about the nature of these calls before and GoDaddy admitted that in their response.

- I tried to explain my condition to the managers and asked why Johnson wasn't there and that he should be able to clear things up - they were unsympathetic.

- I was put on administrative leave without pay, and without further explanation other than "HR will be in touch"

- GoDaddy claims the the reviewed phone calls demonstrate a violation of company policy, however, the point they fail to see is that those calls are not a person violating

company policy willingly, they are a sick person, struggling to function. A SICK PERSON, STRUGGLING TO FUNCTION.

**8)    Despite attempts to reach out to GoDaddy during my 2 week suspension, I was terminated on June 20, the day I was scheduled to start my new position.**

- I have a detailed email I sent to HR, Johnson and Hickok, outlining my position and explaining my condition and the entire situation.

- I never received a response to this email, further demonstrating GoDaddy's failure to enter into the interactive process.

**9)    The results of this wrongful termination have been devastating to me and my family.**

- As a result of my termination, I was forced into a severe financial hardship.

- I could not afford my home and had to break a lease.

- I could not afford my car so it was repossessed.

- In order to survive, I had to cash in my 401k and sell my Godaddy Stocks.

- I had to default on thousands of dollars worth of debt that I was no longer able to pay, and my credit is ruined.

- I borrowed from friends, family as well as payday loans, straddling me with even more debt.

- I had to sell literally every material possession I owned in order to stay afloat.

- Most devastating of all, I had to let my three sons, whom I have 50% custody, live with their mother full-time. I have lost a year of their lives, and I miss them terribly. They did not deserve this.

    My intention with this case is simply to put my life back together again for me and my children, and hopefully raise some awareness about the struggles people suffering from mental illness can experience in the workplace.

Defendant's Position

Desmond began working for GoDaddy in March 2013 as an Internet Sales and Service Consultant (an "Inbound call" position). In or about June 6, 2013, Desmond moved onto the Professional Web Design Department ("PWD"). In or about March 2015, Desmond requested a transfer into GoDaddy's Customer Development Team (an "Outbound call" position); his transfer request was granted. Desmond did not seek this transfer as an accommodation for any disability. Desmond struggled in his Outbound call position and received ongoing support from his supervisor, Matthew Johnson, to help him improve his performance. Although Plaintiff disclosed that he was medicated for bi-polar disorder, he never indicated to Johnson or GoDaddy's human resource department that his bi-polar disorder was preventing him from performing the essential functions of his job or that he needed an accommodation. Indeed, Desmond regularly told Johnson that he was capable of performing his job.

In 2016, Desmond applied for and GoDaddy approved Desmond to take intermittent FMLA leave (1x every 2 months) from April 20, 2016 to October 19, 2016. That same month, coincidentally, Desmond's former supervisor from PWD, Brandon Hicok, informed him of a new sales team he was managing, and he arranged for Desmond to interview for a position on this team. Following the interview, Hicok requested approval to transfer Desmond to his sales team, with a proposed transition date of June 20, 2016. Desmond was expected to continue to maintain his required performance standards while working in his Outbound call position, before transferring to PWD. However, in or about early June 2016, during a routine task burning spot-check, GoDaddy managers Joy Rodger and Julie DiCicco discovered that Desmond's call volume was well above department average, which signaled that he was hanging up on customers. Based on this data, GoDaddy management listened to a sampling of Desmond's calls, only to confirm that he was, indeed, avoiding calls and hanging up on customers. Rodger and DiCicco met with Desmond and played some of his recorded calls for him; he admitted he was

"freezing up" when he got on some calls and he was disconnecting from the customers. He further admitted that he failed to follow GoDaddy's mandatory protocol for what to do when a call with a customer is disconnected, which requires noting the customer's account and notifying a member of management about the disconnection. At no point during this meeting did Desmond indicate that he had a disability or that he needed an accommodation. GoDaddy placed Desmond on an immediate leave of absence and, effective June 20, 2016, terminated his employment for violation of GoDaddy policies.

**4. The jurisdictional basis for the case, describing the basis or jurisdiction and citing specific jurisdictional statues.**

The parties agree that jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331. Plaintiff's claims are brought pursuant the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*.

**5. Any parties which have not been served and an explanation of why they have not been served, and any parties which have been served but have not answered or otherwise appeared.**

All parties have been served.

**6. A statement of whether any party expects to add additional parties to the case or otherwise to amend pleadings (the Court will set a deadline at the Case Management Conference for joining parties and amending pleadings).**

The parties do not expect to add additional parties or further amend the pleadings.

**7. A listing of the contemplated motions and a statement of the issues to be decided by these motions (including motions under Federal Rules of Evidence 702, 703, 704, and 705).**

Defendant may file a Motion for Summary Judgment at the close of discovery.

**8. The status of related cases pending before other courts or other judges of this Court.**

None.

**9. A statement of when the parties exchanged initial disclosures as required by Rule 26(a) of the Federal Rules of Civil Procedure.**

The parties have agreed to exchange initial Rule 26 Disclosure Statements no later than July 25, 2017.

10. **A discussion of necessary discovery, including:**

   a. **The extent, nature and location of discovery anticipated by the parties.**

   Plaintiff's Position

   Plaintiff is prepared to provide detailed medical records, health care provider testimony including psychiatrist and personal counselor, communications records and anything else Defendant may request. Plaintiff will call for testimony from co-workers supporting plaintiff's claims. Plaintiff may request records of phone calls, texts and emails made between plaintiff and Matthew Johnson. As Plaintiff is representing himself in this case, he looks forward to the chance to personally cross-examine Matthew Johnson before a jury.

   Defendant's Position

   Defendant expects to issue written discovery and third party subpoenas, and depose the Plaintiff, his healthcare providers and any other witnesses who may testify in his case.

   b. **Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure.**

   The parties do not believe that any changes to the discovery limitations imposed by the Federal Rules of Civil Procedure are necessary at this time.

   c. **The number of hours permitted for each deposition.**

   The parties agree that fact witness depositions should be limited to four (4) hours in length. Plaintiff's deposition and a company representative's deposition may take up to the presumptive limit of seven (7) hours. The parties agree to work together in good faith should this agreement need to be modified.

11. **A discussion of any issues relating to preservation, disclosure, or discovery of electronically stored information, including the parties' preservation of electronically stored information and the form or forms in which it will be produced (*see* Rules 16(b)(3), 26(f)(3)).**

   The parties understand that they are under a duty to preserve all evidence, including electronically stored information. The parties do not anticipate any problems or issues in producing electronically-stored information and anticipate production will be

made: 1) in the same medium and manner that it was collected and stored in the ordinary course of business; or 2) by searchable .pdf file(s), where necessary.

**12.** **A discussion of any issues relating to claims of privilege or work product (*see* Rules 16(b)(3), 26(f)(3)).**

The parties do not presently anticipate claims of privilege or work product and do not anticipate that a Protective Order is necessary at this time.

**13.** **Proposed specific dates for each of the following:**

    a. Deadline for Initial Disclosures: July 25, 2017

    b Deadline for Joining Parties, and Amending Pleadings: August 15, 2017

    c. Deadline for Completion of Fact Discovery: February 23, 2018

    d. Deadlines for full and complete expert disclosures under Federal Rule of Civil Procedure 26(a)(2)(A)-(E):

    Plaintiff: November 10, 2017

    Defendant: December 15, 2017

    Rebuttal: January 12, 2018

    e. A deadline for completion of all expert depositions: January 26, 2018

    f. A deadline for filing dispositive motions: March 30, 2018

    g. A date by which the parties shall have engaged in face-to-face good faith settlement talks: September 15, 2017

**14.** **With regard to actions brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et. seq., if the parties agree to resolve the action through cross-briefing, they shall jointly propose a deadline for each of the following:**

N/A

**15.** **Whether a jury trial has been requested and whether the request for a jury trial is contested.**

Plaintiff requests a jury trial.

16. **The estimated length of trial and any suggestions for shortening the trial.**

The parties estimate trial will take 2-4 days.

17. **The prospects for settlement and any request of the Court for assistance in settlement efforts, such as a request that the Court refer the matter to another magistrate judge for a settlement conference.**

The parties have engaged in settlement negotiations but have been unable to reach an agreement. They believe the assistance of a magistrate judge would be helpful. Therefore, the parties request that the Court refer the matter to a magistrate judge for a settlement conference.

18. **Any other matters that will aid the Court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure 1.**

None at this time.

RESPECTFULLY SUBMITTED this 24th day of July, 2017.

**BURNSBARTON LLP**

By  */s/* C. Christine Burns
C. Christine Burns
David T. Barton
Alison P. Carter

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

A COPY was also mailed on this 24th day of July, 2017, to:

Daniel Desmond
226 North Hobson Street
Apt. A-7
Mesa, Arizona 85203
*Pro per*

s/ *Carolyn Galbreath*